IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

STATE OF ARIZONA,
*Appellee,*

*v.*

MARTIN DAVID SALAZAR-MERCADO,
*Appellant.*

No. CR-13-0244-PR
Filed May 29, 2014

Appeal from the Superior Court in Pima County
The Honorable Christopher C. Browning, Judge
No. CR20110221-001
**AFFIRMED**

Opinion of the Court of Appeals, Division Two
232 Ariz. 256, 304 P.3d 543
**VACATED IN PART**
**DEPUBLISHED IN PART**

COUNSEL:

Thomas C. Horne, Attorney General, Robert L. Ellman, Solicitor General, Joseph T. Maziarz, Section Chief Counsel, Jonathan Bass (argued), Assistant Attorney General, Criminal Appeals Section, Tucson, for State of Arizona

Lori J. Lefferts, Pima County Public Defender, Lisa M. Hise, Assistant Public Defender, David J. Euchner (argued), Assistant Public Defender, Tucson, for Martin Salazar-Mercado

Mikel Steinfeld and Amy Kalman, Phoenix, for Amicus Curiae Arizona Attorneys for Criminal Justice

JUSTICE TIMMER authored the opinion of the Court, in which CHIEF JUSTICE BERCH, VICE CHIEF JUSTICE BALES, JUSTICE PELANDER, and JUSTICE BRUTINEL joined.

JUSTICE TIMMER, opinion of the Court:

¶1        In 2012, this Court amended Arizona Rule of Evidence 702, which governs the admissibility of expert testimony, to conform to its federal counterpart and follow *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).  We granted review to determine whether Rule 702 and *Daubert* bar admission of "cold" expert testimony that educates the fact-finder about general principles without considering the particular facts of the case.  We hold that Rule 702 does not bar such testimony and the trial court did not abuse its discretion in admitting the challenged expert testimony in this case.

## I.  BACKGROUND

¶2        The State indicted Martin Salazar-Mercado on multiple counts of child molestation and sexual conduct with a minor under age fifteen for abusing his cousin's daughter and step-son.  Salazar-Mercado moved before trial to preclude the State from eliciting expert testimony from Dr. Wendy Dutton, a forensic interviewer who holds a Ph.D. in justice studies, about Child Sexual Abuse Accommodation Syndrome ("CSAAS"), which purportedly explains behaviors commonly exhibited by child sexual abuse victims.  He primarily argued that Dutton's testimony would not satisfy amended Rule 702(d) because she was both a "cold" expert, meaning she would only educate the jury about CSAAS, and a "blind" expert, meaning she had no knowledge about the victims in this case and would not offer any opinions specific to them.  The trial court denied the motion, and Dutton testified at trial, explaining generally how children perceive sexual abuse, describing behaviors involving disclosure of abuse, and relating circumstances in which children may make false allegations.  The jury found Salazar-Mercado guilty on all but two counts, and the court imposed sentences, the most severe of which was life in prison with eligibility for release in thirty-five years.

¶3        The court of appeals affirmed.  *State v. Salazar-Mercado*, 232 Ariz. 256, 258 ¶ 1, 304 P.3d 543, 545 (App. 2013).  Pursuant to Article 6, Section 5(3) of the Arizona Constitution and A.R.S. § 12-120.24, we granted review of Salazar-Mercado's petition for review because it presents an issue of first impression and statewide importance.

## II. DISCUSSION

### A.

### 1.

¶4      We interpret court rules to effect the rule-makers' intent, using the same principles we apply when interpreting statutes. *Chronis v. Steinle*, 220 Ariz. 559, 560 ¶ 6, 208 P.3d 210, 211 (2009). If a rule's language is plain and unambiguous, we apply it as written without further analysis. *Canon Sch. Dist. No. 50 v. W.E.S. Constr. Co.*, 177 Ariz. 526, 529, 869 P.2d 500, 503 (1994). But if the language is ambiguous, we apply secondary principles of construction, such as examining the rule's historical background, its spirit and purpose, and the effects and consequences of competing interpretations. *Chronis*, 220 Ariz. at 560 ¶ 6, 208 P.3d at 211. We review the interpretation of a court rule de novo. *State v. Gutierrez*, 229 Ariz. 573, 576 ¶ 19, 278 P.3d 1276, 1279 (2012) (citation omitted).

### 2.

¶5      We begin our analysis with the language of Rule 702:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

> (b) the testimony is based on sufficient facts or data;

> (c) the testimony is the product of reliable principles and methods; and

> (d) the expert has reliably applied the principles and methods to the facts of the case.

Subsection (d) is ambiguous because it can be reasonably read in two ways. *See State v. Whitman*, No. CR-13-0201-PR, 2014 WL 1385396, at *1 ¶ 7 (Ariz. Sup. Ct. Apr. 9, 2014). As Salazar-Mercado argues, it could mean that an expert *must* apply principles and methods to the particular facts of the case and do so reliably to testify as a witness. Or, as the State contends and the court of appeals and trial court found, it could mean that *if* the expert applies principles and methods to the facts of the case, the expert must do so reliably. *Salazar-Mercado*, 232 Ariz. at 261 ¶ 14, 304 P.3d at 548.

**3.**

**¶6** Rule 702's historical background, along with the background and application of its federal counterpart, persuade us that Rule 702(d) applies only if the expert applies principles and methods to the particular facts of the case. We therefore agree with the court of appeals that the rule does not bar "cold" experts from offering general, educative testimony to help the trier of fact understand evidence or resolve fact issues.

**¶7** This Court amended Rule 702 to conform to Federal Rule of Evidence 702, and the two rules are now identical. Ariz. R. Evid. 702, cmt. to 2012 amend.; Fed. R. Evid. 702; *see State v. Miller*, 234 Ariz. 31, 41 ¶ 29, 316 P.3d 1219, 1229 (2013). Consequently, the federal rule's background and its application by federal courts shed light on the meaning of Arizona's Rule 702(d). *See State v. Green*, 200 Ariz. 496, 498 ¶ 10, 29 P.3d 271, 273 (2001) ("When interpreting an evidentiary rule that predominantly echoes its federal counterpart, we often look to the latter for guidance.") (citation omitted); Ariz. R. Evid., prefatory cmt. to 2012 amend. ("Where the language of an Arizona rule parallels that of a federal rule, federal court decisions interpreting the federal rule are persuasive but not binding with respect to interpreting the Arizona rule.").

**¶8** The Advisory Committee Notes to the federal rule state that the original version of Federal Rule 702 permitted the admission of "cold" testimony: "The rule accordingly recognizes that an expert on the stand may give a dissertation or exposition of scientific or other principles relevant to the case, leaving the trier of fact to apply them to the facts." Fed. R. Evid. 702, Advisory Committee Notes, 1972 Proposed Rules; *see also United States v. Bighead*, 128 F.3d 1329, 1330–31 (9th Cir. 1997) (in child

sexual abuse case, upholding admission of generalized, "cold" expert testimony about "general behavioral characteristics" of child victims, such as "delayed disclosure" and "script memory").

¶9　　　　Federal Rule 702 was amended in 2000 to abandon the general-acceptance standard for admitting expert testimony established by *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923), in favor of the reliability-assessment framework announced in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), as clarified by *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999). Fed. R. Evid. 702, Advisory Committee Notes, 2000 amend. The amended rule imposes a "gatekeeper" obligation on trial judges to admit only relevant and reliable expert testimony. *See Kumho*, 526 U.S. at 147–48. But the amendment did not "alter the venerable practice" of permitting experts "to educate the factfinder about general principles, without ever attempting to apply these principles to the specific facts of the case." Fed. R. Evid. 702, Advisory Committee Notes, 2000 amend. It follows, therefore, that subsection (d) does not preclude this type of "cold" testimony. *Cf. id.* (emphasizing the importance of reliable application "[i]f the expert purports to apply principles and methods to the facts of the case").

¶10　　　　Courts applying Federal Rule 702 since 2000 have permitted experts to provide general, educative testimony. *See, e.g., United States ex rel. Miller v. Bill Harbert Int'l Constr., Inc.*, 608 F.3d 871, 894–95 (D.C. Cir. 2010); *Estate of Gaither ex rel. Gaither v. District of Columbia*, 831 F. Supp. 2d 56, 73–74 & n.21 (D.D.C. 2011); *TC Sys. Inc. v. Town of Colonie*, 213 F. Supp. 2d 171, 175 (N.D.N.Y. 2002). We are not aware of any case holding that Federal Rule 702(d) bars such testimony, nor does Salazar-Mercado cite any. Moreover, the Advisory Committee Notes to Federal Rule 702 provide that "cold" testimony may be admitted if "(1) the expert [is] qualified; (2) the testimony address[es] a subject matter on which the factfinder can be assisted by an expert; (3) the testimony [is] reliable; and (4) the testimony 'fit[s]' the facts of the case." *Id.* This "test" simply rephrases the requirements of Federal Rule 702(a)–(c) and does not require an expert to relate principles to the particular facts of the case or even to be aware of the facts.[1]

---

[1]　　　The "fit" element in the federal Advisory Committee Notes test does not add to or change the requirements of Federal Rule 702(a)–(c).

¶11 We hold that Rule 702(d) does not bar admission of "cold" expert testimony. A court may admit such testimony if it satisfies Rule 702(a)–(c).

**B.**

**1.**

¶12 Salazar-Mercado argues that Dutton's testimony was inadmissible because it did not satisfy Rule 702(a)–(c). Although Salazar-Mercado does not contest Dutton's qualifications, he challenges the helpfulness and reliability of her testimony.

¶13 As the proponent of Dutton's testimony, the State bore the burden of establishing its admissibility under Rule 702 by a preponderance of the evidence. *See State ex rel. Collins v. Seidel*, 142 Ariz. 587, 590, 691 P.2d 678, 681 (1984); Fed. R. Evid. 702, Advisory Committee Notes, 2000 amend. In addition, a trial court may exclude otherwise-admissible evidence if its probative value is substantially outweighed by a danger listed in Rule 403. We review a trial court's admission of expert testimony for an abuse of discretion. *See State v. Chappell*, 225 Ariz. 229, 235 ¶ 16, 236 P.3d 1176, 1182 (2010).

**2.**

¶14 Salazar-Mercado argues that because Dutton knew nothing about the events in this case and was prohibited by our decisions in *State v. Lindsey*, 149 Ariz. 472, 475, 720 P.2d 73, 76 (1986), and *State v. Moran*, 151 Ariz. 378, 382–83, 728 P.2d 248, 252–53 (1986), from opining on the veracity of the children's accusations or addressing hypothetical situations aligned with the facts of this case, her testimony did not "fit" the facts of this case, making it "unhelpful." *See* Rule 702(a). This argument essentially rephrases Salazar-Mercado's contention that Rule 702(d) bars "cold" testimony. We again reject it.

---

Expert testimony "fits" if it is "sufficiently tied to the facts of the case [so] that it will aid the jury in resolving a factual dispute." *Daubert*, 509 U.S. at 591 (quoting *United States v. Downing*, 753 F.2d 1224, 1242 (3d Cir. 1985)); *see also id.* (providing an example of "fit"). As such, "fit" pertains to Rule 702(a)'s "helpfulness" standard.

¶15 The children delayed reporting alleged sexual abuse by a relative and had trouble pinpointing when events occurred. One child victim changed her version of events between the time of reporting and trial. In other cases involving behaviors affecting a child victim's credibility, we have held that expert testimony about general behavior patterns of child sexual abuse victims may help the jury understand the evidence. *See State v. Lujan*, 192 Ariz. 448, 451–52 ¶¶ 9–12, 967 P.2d 123, 126–27 (1998); *Lindsey*, 149 Ariz. at 473–74, 720 P.2d at 74–75; *Moran*, 151 Ariz. at 381, 728 P.2d at 251. The expert, however, cannot "go beyond the description of general principles of social or behavioral science" to offer opinions about "the accuracy, reliability or credibility of a particular witness in the case being tried . . . [or] of the type under consideration." *Lindsey*, 149 Ariz. at 474–75, 720 P.2d at 75–76; *see also Moran*, 151 Ariz. at 382, 728 P.2d at 252. Because Dutton's testimony might have helped the jury to understand possible reasons for the delayed and inconsistent reporting in this case, her testimony satisfied Rule 702(a).

**3.**

¶16 Despite Arizona's past acceptance of CSAAS evidence, Salazar-Mercado asks us to "take a fresh look at CSAAS" and contends that Rule 702(a)–(c) bars such evidence. Because Salazar-Mercado failed to establish a sufficient record to merit renewed scrutiny of CSAAS evidence or a departure from our prior cases, we decline to do so.

¶17 Whether CSAAS evidence is admissible is a preliminary question to be decided by the trial court pursuant to Rule 104(a). In his motion to preclude, Salazar-Mercado made unsubstantiated assertions that, because the facts and data underlying CSAAS are flawed, Dutton's testimony is unhelpful, unreliable, incapable of being evaluated for known or potential rates of error, and, consequently, inadmissible under Rule 702(a)–(c). He also argued that other jurisdictions have questioned the reliability of CSAAS evidence, thereby demonstrating the need for Arizona courts to newly examine such evidence. But Salazar-Mercado did not present any studies, testimony, or other evidence casting doubt on

CSAAS evidence and did not request an evidentiary hearing pursuant to Rule 104(c) to assess the reliability of Dutton's testimony.[2]

**¶18**    The State responded by noting that Arizona courts have approved the admission of CSAAS evidence and recognized Dutton as a qualified expert. *See Lujan*, 192 Ariz. at 451–52 ¶¶ 9–12, 967 P.2d at 126–27; *Lindsey*, 149 Ariz. at 473–74, 720 P.2d at 74–75; *Moran*, 151 Ariz. at 381, 728 P.2d at 251; *see also State v. Curry*, 187 Ariz. 623, 628–29, 931 P.2d 1133, 1138–39 (App. 1996) (holding, under *Frye* standard, that Dutton's CSAAS testimony was helpful to the jury and admissible). The trial judge was "generally familiar" with Dutton's CSAAS testimony as well, "hav[ing] heard her testimony several times." The State also avowed that, in compliance with *Lindsey* and *Moran*, Dutton would not opine on the veracity of the victims in this case, and she did not do so at trial.

**¶19**    Because Salazar-Mercado failed to present any evidence raising questions about our prior decisions permitting CSAAS evidence and did not dispute that Dutton would stay within the *Lindsey/Moran* framework, the trial court did not abuse its discretion by finding that the State satisfied its burden of proving admissibility. Similarly, on this record, we are not persuaded to depart from our prior decisions permitting expert testimony that generally explains behavioral characteristics of child sexual abuse victims without offering opinions about the particular children in the case. Because nothing in this record refuted the State's preliminary showing that Dutton's testimony satisfied Rule 702, the trial court acted within its discretion in admitting it.[3]

---

[2]    Amicus Arizona Attorneys for Criminal Justice questions the scientific validity of CSAAS, citing scholarly authorities calling it into question. Because this evidence was not presented to the trial court, however, we do not consider it. *See Schaefer v. Murphey*, 131 Ariz. 295, 299, 640 P.2d 857, 861 (1982) (holding that an appellate court is "confined to reviewing only those matters contained in the record").

[3]    Although Salazar-Mercado argued to the trial court that Dutton's testimony should be excluded under Rule 403, he does not renew that challenge before this Court, and we do not address it.

¶20        We do not hold that CSAAS evidence or like evidence is always admissible.  Based on a more complete record, a trial court may exercise its gatekeeping role to conclude that proffered expert testimony does not satisfy Rule 702 or that such testimony should be excluded under Rule 403.  The court also should ensure that the expert remains within the bounds of proper expert testimony set by *Lindsey* and *Moran*.  Any departure from these principles would supplant the jury's role.

## III.  CONCLUSION

¶21        Rule 702(d) does not bar admission of "cold" expert testimony that educates the trier of fact about general principles but is not tied to the particular facts of the case.  A trial court may admit such testimony if it satisfies Rule 702(a)–(c) and is not barred by Rule 403.  On the record before us, the trial court did not abuse its discretion by admitting Dutton's testimony.  Consequently, we affirm Mercado's convictions and sentences.  We also vacate paragraphs four through nineteen of the court of appeals' opinion, which addressed Dutton's testimony, and depublish the remainder of the opinion, which mostly addressed an unrelated issue.  *See* Ariz. R. Sup. Ct. 111(g).